IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL ACTION NO. 11-583-1 |
| | : |
| v. | : Philadelphia, Pennsylvania |
| | : May 10, 2012 |
| VICTOR PHILLIP, | : 3:26 o'clock p.m. |
| Defendant | : |
| . . . . . . . . . . . . . . . . : | |

HEARING
BEFORE THE HONORABLE TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE

- - -

APPEARANCES:

For the Government:   ASHLEY KRUIDENIER LUNKENHEIMER, ESQUIRE
                     Assistant U.S. Attorney
                     615 Chestnut Street
                     Suite 1250
                     Philadelphia, PA  19103


For the Defendant:   PETER J. SCUDERI, ESQUIRE
                     1420 Walnut Street
                     Suite 1000
                     Philadelphia, PA

Also present:        Belen Duong
                     Pre-Trial Services

- - -

Audio Operator/ESR:  U. Hevener/K. Makely

Transcribed by:      Paula L. Curran, CET

          (Proceeding recorded by The Record Player digital
sound recording; transcript produced by AAERT-certified
transcriber.)

Laws Transcription Service
48 W. LaCrosse Avenue
Lansdowne, PA 19050
(610)623-4178

1          (The following occurred in open court at 3:26

2     o'clock p.m.)

3          THE COURT:  Mr. Phillip, good afternoon, sir.

4          THE DEFENDANT:  Good afternoon, your Honor.

5          THE COURT:  We're here for a guilty plea and I just

6     wanted to ask, Kristin, could you swear in Mr. Phillip,

7     please?

8          VICTOR PHILLIP, Defendant, Sworn.

9          THE COURT:  All right, thank you.  Sir, now that

10    you're under oath, I just wanted to remind you that anything

11    you say that's false, could be used against you in a

12    prosecution for perjury or making a false statement.

13         THE DEFENDANT:  I understand, your Honor.

14         THE COURT:  Okay, excellent.  Now, if I say anything

15    to you today that you don't understand or you need to talk to

16    Mr. Scuderi about, he's very experienced and very smart, so

17    just tell me and I'll give you time to talk to him.

18         THE DEFENDANT:  Thank you, your Honor.

19         THE COURT:  All right and could you just state for

20    me your full name and how old you are?

21         THE DEFENDANT:  Victor Q. Phillip, Jr., 52,

22    Saturday.

23         THE COURT:  Oh, happy birthday.

24         THE DEFENDANT:  Thank you, your Honor.

25         THE COURT:  All right and can you read, write and

1  speak English?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  All right and how far did you go in

4  school?

5          THE DEFENDANT:  I went to 12th grade.

6          THE COURT:  Okay, where did you go?

7          THE DEFENDANT:  Chichester High School.

8          THE COURT:  Great and have you ever had or been

9  treated for a drug or alcohol addiction or mental illness?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Okay, did you experience any drug

12  treatment in this case?

13          THE DEFENDANT:  I went to, after this happened, I

14  went to a three-week out-patient at Mirmont.

15          THE COURT:  Okay and how did that go?

16          THE DEFENDANT:  Great, it went great.  The insurance

17  approved me for six weeks, I was done in three weeks, because

18  the woman there felt everything was fine.

19          THE COURT:  Okay and everything's been clean ever

20  since?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  All right, I know there were two

23  positive drug tests early on, but since those, nothing,

24  right?

25          MS. DUONG:  They've been clean every since, your

1　Honor.  The first two were dirty for marijuana and that was

2　it.

3　　　　　THE COURT:  Okay, good.

4　　　　　THE DEFENDANT:  Yes, your Honor.

5　　　　　THE COURT:  I commend you on that, you know.  Are

6　you feeling okay today?

7　　　　　THE DEFENDANT:  Your Honor, this is the first and

8　last time I've ever been in trouble and you'll never see me

9　again any level after this, I swear to you.

10　　　　　THE COURT:  Okay, good.

11　　　　　THE DEFENDANT:  That's how I feel about this.

12　　　　　THE COURT:  All right, how is your health today?

13　　　　　THE DEFENDANT:  My health's great, 52, I'm not on no

14　kind of medications as far as cholesterol or anything, you

15　know, high blood pressure.  I feel really good.

16　　　　　THE COURT:  Good.  You're in better shape than we

17　are, right?

18　　　　　MR. SCUDERI:  Better than me.

19　　　　　THE DEFENDANT:  Hard work, your Honor.

20　　　　　THE COURT:  All right, excellent.  Now, has Mr.

21　Scuderi gone over the charges against you and fully explained

22　to you your right to a trial and the defenses you have in

23　this case?

24　　　　　THE DEFENDANT:  Yes, he has, your Honor.

25　　　　　THE COURT:  All right and I see there's a plea

1  agreement in this case.  Do you have that, Mr. Scuderi?

2          MR. SCUDERI:  Yes, your Honor.

3          THE COURT:  Sir, could you just look at the plea

4  agreement and verify it for me that you signed that agreement

5  and also the advice of rights form that's attached?

6          THE DEFENDANT:  Yes, I have, your Honor, and also,

7  yes, I -- on that, yes.

8          THE COURT:  Okay and that last document explains all

9  the rights you have that you're giving up by pleading guilty?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Okay.  Now, did Mr. Scuderi fully

12  explain the plea agreement to you and all those rights that

13  you're giving up?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right, do you feel as though you've

16  had enough time to talk to Mr. Scuderi about your decision to

17  plead guilty?

18          THE DEFENDANT:  Yes, your Honor.  He's been very

19  informative, yes.

20          THE COURT:  Okay and so far, has he done everything

21  that you've asked him to do on your case?

22          THE DEFENDANT:  And more so, yes.

23          THE COURT:  Doesn't get any better than that, Mr.

24  Scuderi.

25          THE DEFENDANT:  Yes.

1    MR. SCUDERI:  He's not right.

2    THE COURT:  All right, what I'd like to do now, sir,

3 is have Ms. Lunkenheimer, the prosecutor, summarize the terms

4 of the plea agreement and ask you to listen to her and just

5 be sure this is the deal that you feel as though you got, all

6 right?

7    THE DEFENDANT:  Your Honor, thank you.

8    THE COURT:  Okay.

9    MS. LUNKENHEIMER:  Yes, your Honor.  Under this plea

10 agreement, the defendant agrees to plead guilty to the two

11 counts of the information charging him with attempted

12 possession of Oxycodone in violation of Title 21, United

13 States Code, Section 846.

14    As part of this agreement, there are certain

15 stipulations that I will go over in a moment.  But there is

16 not an agreement in terms of at the time of sentencing, the

17 Government will make whatever sentencing recommendation as to

18 imprisonment, et cetera, that the Government feels

19 appropriate and will comment on all of the circumstances and

20 evidence in this case.

21    I'm going to skip straight ahead before, I'm not

22 going to go chronologically in the agreement, to the

23 stipulations because I do want to note something after that.

24    This plea agreement is an agreement between the

25 defendant and you need to understand that and the Government.

1    It is not an agreement with this Court and is not an

2    agreement with the probation office, who will ultimately come

3    up with the recommendation for the sentencing, under the

4    sentencing guidelines, for what should be imposed in terms of

5    a sentence by this Court, if you are to plead guilty today.

6         And therefore, when I read these stipulations that

7    do pertain to the sentencing guidelines, the defendant needs

8    to understand and the agreement makes clear, that these

9    stipulations are truly between the Government and the

10   defendant and that the probation office and the Court may

11   differ from them at the ultimate time of sentencing.

12        The parties have agreed and stipulated for the

13   offenses of conviction charged in the information, defendant

14   attempted to possess five Oxycontin 40 milligram tablets,

15   each of which would have been a mixture and substance

16   containing a detectable amount of Oxycodone and that as of

17   the date of this agreement, the defendant has demonstrated

18   acceptance of responsibility for his offense, making the

19   defendant eligible for a two-level downward adjustment under

20   United States Sentencing Guideline Section 3(e)1.1(A).

21        And the reason I've jumped to that, briefly and did

22   it at a time where I was also commenting on the provisions

23   that allow the Government ultimately to make any

24   recommendation that the Government deems appropriate at

25   sentencing, is that it's my understanding Mr. Scuderi and his

1   client do intend to argue under Title 18, United States Code,

2   Section 3607, that there should be somewhat -- I don't know,

3   it's not called -- the first time offender provision, the

4   Court is familiar with it and I wouldn't call it, it's sort

5   of, okay, a probationary sentence should be imposed.  It's

6   one that may avoid an actual final sentence of imprisonment

7   and Mr. Scuderi is well aware that the Government has

8   expressed its intention, at this point in time, to oppose

9   that.  And I only say that because the Government is

10  certainly bound by the stipulations in the plea agreement

11  with the defendant.  But there may be other arguments

12  presented at sentencing that go outside of those

13  stipulations.

14          THE COURT:  Okay.

15          MS. LUNKENHEIMER:  The defendant needs to understand

16  and it's laid out in his plea agreement, that he does face

17  the following statutory maximum sentence.  On each of Counts

18  1 and 2, he faces a maximum of one year in prison, a maximum

19  of one year of supervised release, a $1,000 fine and a $100

20  special assessment.  Because there are two counts, that means

21  that the ultimate maximum sentence he faces is two years in

22  prison, one year of supervised release, a $2,000 fine and a

23  $200 special assessment.

24          Further, if supervised release is imposed and its

25  terms and conditions are violated by the defendant, he needs

1    to understand that he could face additional imprisonment

2    above and beyond any sentence he received by this Court and

3    that means up to one year per count of conviction based on

4    those violations.

5         There is an agreement here that the defendant would

6    fully provide truthful and accurate information about his

7    financial status to the U.S. Attorney's Office and normally

8    that would be done through the conducting of a pre-sentence

9    investigation report by the probation office.

10        The defendant needs to understand that as part of

11   this agreement, he has agreed to pay $200 before the time of

12   sentencing.  That he may not withdraw his plea because the

13   Court declines to follow any recommendation, motion or

14   stipulation by the parties to this agreement.  And that no

15   one has promised or guaranteed to the defendant what sentence

16   this Court will impose.  Again, that just speaks to the fact

17   that this agreement is really between the Government and the

18   defendant.

19        In exchange for the stipulations and other things in

20   this agreement by the Government, the defendant has waived

21   all rights to appeal or collaterally attack his conviction,

22   sentence or any other matter relating to this prosecution

23   with certain exceptions.  If the Government were to appeal

24   from the sentence, then the defendant may appeal his

25   sentence.  If the Government does not appeal, then despite

1   the waiver in this agreement, he may appeal under certain

2   circumstances.  If his sentence on any count of conviction

3   exceeds the statutory maximum for that count, as I've

4   described, then he may appeal.  He may also appeal if the

5   sentencing judge, most likely this Court, erroneously departs

6   upward pursuant to the sentencing guidelines or if the

7   sentencing judge, exercising its discretion pursuant to

8   United States v. Booker, imposes an unreasonable sentence

9   above the final sentencing guideline range determined by the

10  Court.  If the defendant does appeal pursuant to those

11  paragraphs, he may not bring in other issues for appeal that

12  I have not just described.

13          Mr. Scuderi is retained and so there is a Hyde

14  Amendment waiver for waiving his claim under that amendment

15  for attorney's fees or other litigation expenses.  There is a

16  Freedom of Information Act waiver and I'm just going to read

17  the final paragraph of the agreement verbatim.

18          "It is agreed that the parties' guilty plea

19  agreement contains no additional promises, agreements or

20  understandings, other than those set forth in this written

21  guilty plea agreement and that no additional promises,

22  agreements or understandings will be entered into unless in

23  writing and signed by all parties."  And the reason I wanted

24  to read that verbatim is because this is our agreement.

25  There is no side agreement and I want to make sure the

1  defendant understands that this is, at this point in time,

2  this is the only agreement he has with the Government.

3          As the Court has already asked the defendant to

4  acknowledge, there is an Acknowledgement of Rights attached

5  to the guilty plea agreement and it's my understanding he has

6  told the Court that he has signed and I know the Court will

7  review what is contained therein, which includes may of the

8  trial rights that he gives up by pleading guilty.

9          THE COURT:  Thank you.  Mr. Scuderi, is that the

10 full deal?

11         MR. SCUDERI:  That is correct, your Honor and Ms.

12 Lunkenheimer referred to a request I was going to make that's

13 pursuant to 18 USC, 3607, which is special probation.

14         THE COURT:  Okay.

15         MR. SCUDERI:  That's what I requested.

16         THE COURT:  I understand.

17         MS. LUNKENHEIMER:  That's the term for --

18         MR. SCUDERI:  Right, right.

19         MS. LUNKENHEIMER:  -- special probation.

20         THE COURT:  And you're going to make that after a

21 pre-sentence report is prepared --

22         MR. SCUDERI:  Yes, your Honor.

23         THE COURT:  -- at the time of sentencing?

24         MR. SCUDERI:  Yes, we want to discuss that.

25         THE COURT:  Okay.  Mr. Phillip, do you agree that

1  those are the terms of the agreement that you have with the

2  Government?

3           THE DEFENDANT:  Yes, your Honor, I do.

4           THE COURT:  Any hesitation?

5           THE DEFENDANT:  No, it's just -- I understand, your

6  Honor.  It's just pretty heavy for me to understand, you know

7  what I mean?

8           THE COURT:  All right, so do you want a minute to

9  talk to Mr. Scuderi?

10           THE DEFENDANT:  No, I totally understand.  I mean, I

11  don't mean to be disrespectful at all, it's just --

12           THE COURT:  Oh, you're not.  I just want to make

13  sure that there's not any other --

14           THE DEFENDANT:  I understand it's, I understand.

15           THE COURT:  Okay, thank you.

16           THE DEFENDANT:  Yes, it's a little emotional, that's

17  all, your Honor.

18           THE COURT:  I understand.

19           THE DEFENDANT:  Yeah.

20           THE COURT:  Other than those terms that Ms.

21  Lunkenheimer read, did anyone promise or offer you anything

22  else to get you to plead guilty?

23           THE DEFENDANT:  No, your Honor.

24           THE COURT:  Do you understand that no one can

25  guarantee you what sentence you'll receive from me?

1          THE DEFENDANT:  I understand that, your Honor.

2          THE COURT:  Even I can't tell you that today,

3     because I haven't read the report, which describes your

4     background and your character and your history.  So until I

5     read that, I won't have any idea myself.

6          THE DEFENDANT:  I understand, your Honor.

7          THE COURT:  Did anyone use force, violence or

8     threats to get you to plead guilty?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  All right, are you doing so because of

11    your own free will?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  All right and do you understand that you

14    are entering a plea to a misdemeanor and that you'll be

15    adjudged guilty of a misdemeanor and it may deprive you of

16    other civil rights that go with such a conviction.

17          THE DEFENDANT:  I'm hoping it will happen, yes, I

18    understand that, your Honor.

19          THE COURT:  Right and also if it turns out you're

20    not a U.S. citizen, you can be deported.

21          THE DEFENDANT:  I'm a citizen, your Honor.

22          THE COURT:  Right.

23          THE DEFENDANT:  Eight years in the army.

24          THE COURT:  All right.

25          THE DEFENDANT:  I'm a citizen.

1          THE COURT:  Okay, well, thank you for your service.

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And you served in Korea?

4          THE DEFENDANT:  I served in Korea for a year and

5  three years in Germany and the rest of the time in the United

6  States.

7          THE COURT:  Great, well, thank you.  What unit were

8  you in?

9          THE DEFENDANT:  I was in the 47th Cav in Korea.

10          THE COURT:  Great, where are they now?  Are they in

11  Afghanistan?

12          THE DEFENDANT:  I think they're still there, your

13  Honor, seven miles in the DMZ.  I was young then, I was 18

14  years old.

15          THE COURT:  Join the Army and see the world, right?

16          THE DEFENDANT:  Yes, your Honor and I did.

17          THE COURT:  Yes, well, thank you, again, for your

18  service.

19          Also, I wanted to advise you that I don't know if --

20  I know you're working now, but if you hope to get your job

21  back at Boeing, I don't know whether this guilty plea could

22  impact whether they take you back or not.  So I can't make

23  any guarantees to you about that.

24          THE DEFENDANT:  I understand, your Honor.

25          THE COURT:  So you understand that if you plead

1    guilty, that may impact whether Boeing takes you back?

2              THE DEFENDANT:  I understand, your Honor.

3              THE COURT:  Okay.

4              THE DEFENDANT:  It's just a bad situation.

5              THE COURT:  All right, now, it's my understanding

6    that the maximum penalties Ms. Lunkenheimer's already

7    outlined.  Do you understand those?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  All right and you understand that this

10   offense is covered by what's called the sentencing guidelines

11   and that I would be required to consider those guidelines at

12   any sentencing, but I could depart either upward or downward

13   under certain circumstances?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  All right, the probation officer is

16   going to prepare a pre-sentence report, which will set forth

17   your sentencing guideline range.  If you disagree with the

18   report, your guilty plea is still binding, do you understand

19   that?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  But nevertheless, you can contest the

22   report with the officer and if he doesn't agree with you, you

23   can make objections here in court before me and the

24   Government can also do that.  Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  All right, do you understand that your

2    attorney and the Government attorney can agree on facts and

3    make recommendations, motions or stipulations concerning your

4    sentence, but I don't have to do what your attorney and Ms.

5    Lunkenheimer ask me to do?

6          THE DEFENDANT:  I understand, your Honor.

7          THE COURT:  That's what Ms. Lunkenheimer was talking

8    about a few minutes ago.

9          THE DEFENDANT:  That was the only thing I didn't

10   understand.  I was going to say, your Honor, first it sounded

11   like that the Government had more control than the Judge on

12   this case.  And that's the part I didn't understand, but I

13   understand that you make the final decision.

14         THE COURT:  Just the opposite.

15         THE DEFENDANT:  Correct.

16         THE COURT:  The Government and Mr. Scuderi can

17   agree, for example --

18         THE DEFENDANT:  Right.

19         THE COURT:  -- on what your sentencing guideline

20   range should be.

21         THE DEFENDANT:  Correct.

22         THE COURT:  But I disagree with them --

23         THE DEFENDANT:  Right.

24         THE COURT:  -- and what I say goes.

25         THE DEFENDANT:  You're the final decision, correct,

1   your Honor.

2        THE COURT:  Right, okay.

3        THE DEFENDANT:  Thanks for clearing that up, your

4   Honor.

5        THE COURT:  Sure.

6        THE DEFENDANT:  It was the only thing I wasn't sure

7   of when she was reading it.

8        THE COURT:  Okay.

9        THE DEFENDANT:  Thank you.

10       THE COURT:  And whether or not I agree or not, your

11  plea agreement's going to be binding.

12       THE DEFENDANT:  I understand that.

13       THE COURT:  Okay.  Do you understand that there's no

14  more parole and if you're sentenced to imprisonment, you have

15  to serve your time in prison?

16       THE DEFENDANT:  Yes, your Honor.

17       THE COURT:  Do you understand that normally you can

18  appeal your sentence to a higher court, which could modify or

19  set aside the sentence.  But in this case, you've executed

20  what's called a waiver of your appellate rights and what that

21  means is you are significantly limiting your right to appeal

22  or attack your conviction after sentencing and the terms Ms.

23  Lunkenheimer outlined and the limited circumstances in which

24  you could appeal.  So you're giving up a lot of appellate and

25  collateral attack rights.

1       THE DEFENDANT:  I think it's the right thing to do,

2   your Honor, so.

3       THE COURT:  Okay, as long as you discussed that with

4   Mr. Scuderi and you understand it.

5       THE DEFENDANT:  Yes.

6       THE COURT:  All right, now, let me just explain to

7   you some of the constitutional rights you're giving up, many

8   of which are in the advice of rights form you just signed.

9   Do you understand that you are presumed innocent until you

10  are proven guilty by the Government beyond a reasonable

11  doubt?

12      THE DEFENDANT:  Yes, your Honor.

13      THE COURT:  Do you understand that you have a right

14  to the assistance of a lawyer, that is, Mr. Scuderi or any

15  other lawyer you decide to hire, at every stage of the

16  proceedings including before trial, during trial, after trial

17  and for any appeals about whether there was any errors in

18  this proceeding or in the sentencing?

19      THE DEFENDANT:  Yes, your Honor.

20      THE COURT:  Do you understand that you have a right

21  to plead not guilty and persist in that not guilty plea and

22  have your case tried by a jury of twelve or by a judge?

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  And by the way, you've agreed to have

25  the case heard by me, I'm a Magistrate Judge.  You have a

1  right to have your case heard by a District Court Judge.  Do

2  you understand that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  All right, do you understand that you

5  have a right to a jury of your peers drawn from the residents

6  of this district and you would get help in selecting a jury

7  for your trial?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you understand that in order to find

10 you guilty, the verdict for the jury must be unanimous, that

11 is, all twelve jurors must agree that the Government has

12 proven your guilt beyond a reasonable doubt?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Do you understand that you could obtain

15 a subpoena or court order to bring witnesses or other

16 evidence into court to help support your defense?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  And do you understand that if you are

19 found guilty, you could appeal such a finding of guilt to a

20 higher court, which could set aside or modify your conviction

21 or finding of guilt, but in this case, you're giving up that

22 right?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  All right, do you understand you have a

25 right to confront and cross-examine witnesses.  That is, to

1    sit in a courtroom and see the people accusing you of a crime

2    face to face and challenge their testimony and Mr. Scuderi

3    would be able to ask them questions to try to undermine their

4    version of events?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  And you're giving that up?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  All right, do you understand that at a

9    trial, you don't have to testify and take the witness stand

10   if you don't want to?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  And no one can force you to do that and

13   if you elect not to take the witness stand, the Government,

14   Ms. Lunkenheimer could not comment or make reference to the

15   fact that you did not testify?

16          THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you understand that by entering this

18   guilty plea, there will be no trial and you're giving up all

19   the rights I described and all the rights contained in that

20   advice of rights form?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Now, in order to prove you guilty, the

23   Government would have to prove two things beyond a reasonable

24   doubt and these are the legal requirements of the charges you

25   face.  The first is the Government has to prove that you

1  intended to commit the crime of illegally possessing a
2  controlled substance, in this case, a mixture or substance
3  containing a detectable amount of Oxycodone.  And second,
4  that thereafter, you did some act constituting a substantial
5  step toward the commission of that crime which strongly
6  corroborates your criminal intent.
7          THE DEFENDANT:  I understand, your Honor.
8          THE COURT:  Okay.  All right, now I'd like Ms.
9  Lunkenheimer to summarize the facts the Government would
10  offer to prove your guilt and I want you to listen carefully
11  to what she says, because after she's done, I'm going to ask
12  you if you did all the things she says they can prove you did
13  and whether you agree with what she said.  So if something
14  she says you disagree with, you have to tell me.
15          THE DEFENDANT:  All right, your Honor.
16          THE COURT:  Okay?
17          THE DEFENDANT:  Thank you, your Honor.
18          THE COURT:  All right, Ms. Lunkenheimer?
19          MS. LUNKENHEIMER:  Thank you, your Honor.  If this
20  case were to proceed to trial, the Government would introduce
21  evidence through witnesses and documentary exhibits that
22  would show the following.  On September 9, 2011, the
23  defendant met with an individual cooperating with the
24  Government outside of a building on the Boeing Company's
25  Ridley Park, Pennsylvania campus.  That campus being in the

1  Eastern District of Pennsylvania.  There, the defendant

2  bought three placebo Oxycontin 40 milligram tablets from the

3  cooperating individual for $60.  Those events relate to Count

4  1 of the information.

5          As to Count 2, on September 22, 2011, the defendant

6  again met with the cooperating individual, this time inside

7  of a building on the Boeing Company's Ridley Park,

8  Pennsylvania campus.  There, the defendant bought two placebo

9  Oxycontin 40 milligram tablets from the CS for $40.

10          THE COURT:  Okay, Mr. Phillip, is that what you did?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Okay and you fully admit to all of the

13  facts Ms. Lunkenheimer stated?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  Do you now wish to change

16  your plea from not guilty to guilty?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  All right, would you please stand and

19  we'll take your guilty plea.

20          THE DEPUTY CLERK:  Victor Phillip, you have been

21  charged in Information Number 11-583 in violation of 21, USC,

22  Section 846, attempted possession of Oxycodone, two counts.

23  How do you plead, guilty or not guilty?

24          THE DEFENDANT:  Guilty.

25          THE DEPUTY CLERK:  Thank you.

1          THE COURT:  All right, sir, thank you.  I'll accept

2     your guilty plea.

3          I'm going to make the following findings, that you

4     are fully alert, competent and capable of entering an

5     informed plea.  That this plea is a knowing and voluntary

6     plea supported by an independent basis of fact containing

7     each of the essential elements of offenses you pleaded guilty

8     to.  You are now, your guilty plea is therefore accepted and

9     you're now adjudged guilty of both offenses charged in the

10    information.

11         I'm going to order that a pre-sentence report be

12    prepared by the probation office.  You'll be required to give

13    information to assist the probation officer with that process

14    and you can enlist the assistance of Mr. Scuderi during that

15    and he's very familiar with how that works, so he can guide

16    you through that.

17         THE DEFENDANT:  I appreciate it.

18         THE COURT:  It's very important for you to be very

19    candid with the probation officer about all the information

20    and your background, because that will help me get a true

21    picture of your life for sentencing.

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Now, I'd ask that both you and Mr.

24    Scuderi sit down and review the pre-sentence report when it's

25    completed.  And then immediately notify Ms. Lunkenheimer and

1    the probation officer if there's any objections to the

2    information in the report.  If it can't get worked out, I'll

3    resolve them at sentencing.

4          Now, I've set a sentencing date and I want to make

5    sure it's okay with you and your lawyer, August 23rd?

6          MR. SCUDERI:  That's fine.

7          THE COURT:  Is everybody available that date?

8          MS. LUNKENHEIMER:  The Government is available.

9          THE COURT:  I know Ms. Lunkenheimer is always

10   available apparently.  We're trying to get her a social life,

11   but --

12         MR. SCUDERI:  Right, right.

13         THE COURT:  Does that work for you, Mr. Scuderi?

14         MR. SCUDERI:  That's fine.

15         THE COURT:  Now, Mr. Phillip, is that date

16   convenient?  I don't want to disrupt your family's vacation

17   or anything like that.

18         THE DEFENDANT:  Oh, no, I'll make it work, your

19   Honor.

20         THE COURT:  Okay, because I can do a different date

21   if you have plans.

22         THE DEFENDANT:  No, I'm good, your Honor.

23         THE COURT:  Okay.

24         THE DEFENDANT:  Thank you.

25         THE COURT:  All right, so we'll do August 23rd, what

1    time?  We'll do it at 3:00 o'clock on the 23rd.

2          All right, now, it's my understanding from pre-trial

3    that bail is to continue, Ms. Duong?

4          MS. DUONG:  Yes, your Honor.

5          THE COURT:  All right, is that all right, Ms.

6    Lunkenheimer?

7          MS. LUNKENHEIMER:  Yes, your Honor.

8          THE COURT:  All right, it sounds like you've been

9    doing very good on pre-trial release, Mr. Phillip.  I urge

10   you to continue to do that and do everything that the

11   pre-trial services officer asks of you and it seems like

12   you've really taken a lot of steps to put your life back

13   together, so I commend you for that.

14         THE DEFENDANT:  Yes, your Honor.  Like I said

15   before, it's the first and the last time you'll ever see me

16   again and that's true.

17         THE COURT:  All right, well, that's good and thank

18   you very much for coming in today.  Is there anything else,

19   Counsel?

20         MR. SCUDERI:  No, your Honor.

21         MS. LUNKENHEIMER:  No, your Honor.

22         THE COURT:  All right, Mr. Scuderi, good to see you

23   again.  Ms. Lunkenheimer, thank you.

24         MR. SCUDERI:  Have a good day.

25         THE COURT:  Oh, you, too.

1          (Proceeding adjourned 3:49 o'clock p.m.)

2                          * * *

<u>CERTIFICATION</u>

      I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

s:/Geraldine C. Laws, CET        Dated 9/19/12
Laws Transcription Service